**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JASON C. CALLICOTTE, *et al*, | § | CIVIL ACTION NO. 4:20-cv-1369 |
| (SPN 01401470) | § | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| ED GONZALEZ, *et al*, | § | |
| *Defendants*. | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT[1]**

1. Plaintiffs' Section 1983 claims against Defendant Harris County arise from its failure to provide constitutionally adequate conditions of confinement to protect Plaintiffs (and similarly situated pre-trial detainees at the Harris County Baker Street Jail in Harris County, Texas ["the Jail"]) from the known dangers of COVID-19, particularly given their documented vulnerabilities to significant suffering or death if they become infected.

2. Despite the known threat that COVID-19 represents (particularly to those with conditions like Plaintiffs'), the Jail has failed to provide pre-trial detainees with sufficient access to (1) clean face masks capable of slowing the spread of the virus, (2) personal hygiene items (including sufficient quantities of soap that lathers, paper towels, and hand sanitizer), (3) educational materials concerning ways to slow the spread of COVID-19, and (4) social distancing.

---

[1]    Plaintiffs respectfully copy verbatim a significant number of paragraphs from the original complaint in *Valentine v. Collier*, No. 4:20-CV-1115 (authored by John R. Keville, Denise Scofield, Michael T. Murphy, Brandon W. Duke, Benjamin D. Williams, Robert L. Green, Corinne Stone Hockman, Jeff Edwards, Scott Medlock, Michael Singley, and David James).

1

3. Plaintiffs respectfully ask this Honorable Court to set their application for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Defendant Harris County.

## PARTIES

### A. Plaintiffs

4. Plaintiff Jason Callicotte is now and was at all relevant times a pre-trial detainee at the Harris County Jail in Houston, Texas.

5. Plaintiff Bryant Davis is now and was at all relevant times a pre-trial detainee at the Harris County Jail in Houston, Texas.

6. Plaintiff Christian Mejia is now and was at all relevant times a pre-trial detainee at the Harris County Jail in Houston, Texas.

7. Plaintiff Ronnie Williams is now and was at all relevant times a pre-trial detainee at the Harris County Jail in Houston, Texas.

8. Plaintiff Ashton Wilson was a pre-trial detainee at the time this case was filed but has since been released.

9. Jason Callicote has one strike under PLRA guidelines regarding lawsuits by incarcerated individuals.

10. Plaintiffs Davis, Mejia, Williams, and Wilson have never filed any pro se actions.

### B. Defendant

11. The parties agree Harris County is the proper defendant.

## JURISDICTION AND VENUE

12. This Court has jurisdiction to hear the merits of Plaintiff's claims because they arise under 42 U.S.C. § 1983.

13. Venue is proper under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the Southern District of Texas, Houston Division.

14. All conditions precedent have been performed or have occurred.

## FACTS

### A.  Insufficient practices

15. Harris County provides pre-trial detainees like Plaintiffs with:

    a.  an environment in which social distancing is not practiced;

    b.  insufficient access to clean face masks;

    c.  insufficient quantities of soap;

    d.  an environment in which soap that becomes available is hoarded and unavailable to all;

    e.  soap that does not lather (despite CDC and United Nations Educational, Scientific and Cultural Organization (UNESCO) recommendations);

    f.  insufficient access to hand sanitizer (Ian MacDougall, *'I Do Not Want to Die in Here': Letters from the Harris County Jail*, HOUSTON PUBLIC MEDIA (May 4, 2020) https://www.houstonpublicmedia.org/articles/news/2020/05/04/368658/i-do-not-want-to-die-in-here-letters-from-the-harris-county-jail/);

    g.  no paper towels for hand drying;

    h.  no air dryers for hand drying;

    i.   insufficient access to educational materials concerning COVID-19 (including symptoms and how to slow its spread);

    j.   insufficient quantities of cleaning materials for cells and housing areas; and

    k.   no gloves of any kind.

16. Additionally, jail staff does not separate COVID-19 positive pre-trial detainees' laundry from the remainder of the population's laundry.

17. When pre-trial detainees are provided cleaning supplies, they are the same supplies used in the quarantined pods.

**B.  Recommended practices**

18. The spread of the virus can be prevented by:

    a.   maintaining social distance of about six feet from other individuals not in one's own household;

    b.   washing hands often, for at least 20 seconds, with sudsy lathering soap and water (*How Soap Kills COVID-19 on Hands*, UNITED NATIONS EDUC., SCIENTIFIC AND CULTURAL ORG., (June 4, 2020), https://en.unesco.org/news/how-soap-kills-covid-19-hands);

    c.   drying hands after washing with a clean towel to prevent the transfer of germs (*Show Me the Science How to Wash Your Hands*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/handwashing/show-me-the-science-handwashing.html (last updated March 4, 2020));

    d.   if soap and water is unavailable, using hand sanitizer that contains at least 60% alcohol;

    e.   routinely cleaning and disinfecting frequently touched surfaces;

  f. covering both the mouth and nose with a face covering or mask when around other people (*How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html); and

  g. washing and drying cloth masks after each use. *Washing Cloth Face Coverings*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (last updated May 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-to-wash-cloth-face-coverings.html.

19. Maintaining a social distance from others of six feet is essential to prevention because infected respiratory droplets can only travel so far in the air.

20. For face coverings to be effective, they must be worn by everyone in a public setting, even if an individual has no symptoms and does not feel sick. *How to Protect Yourself & Others*, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (July 31, 2020).

21. Physical distance is especially crucial for those who (like Plaintiffs) are at higher risk for severe illness from contracting COVID-19. *See Social Distancing*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 15, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/social-distancing.html.

**C.  Sworn Statements from Jason Callicotte's Declaration (*see generally* Dkt. 37)**

22. Harris County Jail employees are not following Centers for Disease Controls and Prevention "Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities."

23. While Harris County officials have implemented numerous policies in regard to the prevention of the spread of COVID-19 in the jail, those policies are not being enforced.

24. During the months of March, April, and May 2020, pre-trial detainees were given one (1) 8-hr disposable surgical mask a total of three (3) times.

25. In June 2020, pre-trial detainees were given black cloth masks which have not been laundered or exchanged since that date.

26. While I was housed on the third floor of 1200 Baker St. Jail, I saw one flyer posted, in English, describing symptoms of COVID-19 and notifying pre-trial detainees of waived medical co-pay fees.

27. There were no instructions on how to mitigate the spread of COVID-19 nor what to do if symptoms develop.

28. I was transferred to the fifth floor of the 1200 Baker St. Jail on May 26, 2020 and since that date I have not seen any posted communications of any kind, in any language, anywhere on the fifth floor in regard to the COVID-19 pandemic.

29. Since the beginning of the pandemic in March, I have not seen or heard any staff member communicating orally any information about the COVID-19 pandemic/illness, to anyone, ever.

30. There is absolutely no signage present anywhere on my housing unit (or elsewhere on the fifth floor) in regard to COVID-19.

31. There are absolutely no videos or other educational materials being disseminated to the jail population.

32. The soap we are given, when we are given soap, is a body wash formula manufactured by: Texas Correctional Industries -Huntsville Texas 77342 phone no. 1800 833 4302.

33. This body wash is not anti-bacterial.

34. This body wash is not distributed freely enough to promote frequent hand-washing.

35. Initially, large jugs of the body wash were placed in the dorm approximately once per week as a community supply, first come, first serve.

36. Now, officers are periodically bringing it to pre-trial detainees who have containers to store it in.

37. Liquid, alcohol-based, hand sanitizer is made available, on some days, to be sprayed on pre-trial detainees' hands by an officer once per day.

38. On most days it is not even made available once.

39. No gloves of any kind are made available to pre-trial detainees in the dorms for any reason.

40. So, there are no gloves available for cleaning purposes.

41. Pre-trial detainees are not given paper towels for hand drying purposes.

42. The only time paper towels are placed in the dorm is when the cleaner is sprayed on the tables.

43. Only a quantity of paper towels sufficient to wipe the cleaner off the tables is made available.

44. Our personal towels are only laundered twice per week on Monday and Wednesday.

45. Numerous officers (including sergeants) do not wear masks when in congregation of two or more.

46. Discovery of video footage from job posts will confirm this.

47. Any measures whatsoever that have been implemented to mitigate the spread of COVID-19 in Harris County Jail have been lackadaisically and haphazardly enforced creating a veritable petri-dish with the pre-trial detainees of Harris County Jail as human test subjects.

48. We are not guinea pigs, yet we are being treated as such.

**D.  Plaintiffs' risk**

49. The Centers for Disease Control identified certain categories of individuals at a higher risk of severe illness or death, including people of any age who have underlying medical conditions. *People Who Are At Higher Risk For Severe Illness,* CTRS. FOR DISEASE CONTROL & PREVENTION (June 25, 2020), https://cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html.

50. Examples of such underlying medical conditions include lung disease, heart disease, chronic liver or kidney disease (including hepatitis and dialysis patients), diabetes, epilepsy, hypertension, compromised immune systems (such as from cancer, HIV, or autoimmune disease), blood disorders (including sickle cell disease), and obesity. *Certain Medical Conditions and Risk for Severe COVID-19*, CTRS. FOR DISEASE CONTROL AND PREVENTION (July 21, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.

51. Plaintiffs have the following relevant medical conditions:

    a.  Jason Callicotte: Hepatitis C, high blood pressure, and seizures.

    b.  Bryan Davis: heart disease, hypertension, and seizures.

    c.  Christian Mejia: severe psoriasis and complications from a previously punctured lung and six fractured ribs.

    d.  Ashton Wilson: diabetes, hypertension, and kidney and liver failure.

52. Harris County has notice each of the foregoing plaintiffs has each of the foregoing medical conditions.

53. Serious illness and death are also significantly more common among people with underlying chronic health conditions, regardless of age.

54. The case fatality rate for those with pre-existing medical conditions (including cardiovascular disease, respiratory disease, diabetes, and immunocomprimisation) is 12 times higher than for those without underlying health conditions. *If you are at higher risk – How to reduce risk of infection and what to do if you get sick*, HARVARD HEALTH PUBLISHING (July 2, 2020), https://www.health.harvard.edu/diseases-andconditions/if-you-are-at-higher-risk.

55. Plaintiffs are therefore at a significantly higher risk of significant illness or death. *CDC updates, expands list of people at risk of severe COVID-19 illness*, CTRS. FOR DISEASE CONTROL AND PREVENTION (June 25, 2020), https://www.cdc.gov/media/releases/2020/p0625-update-expands-covid-19.html.

56. Even without these medical conditions, COVID-19 can cause severe damage to lung tissue, sometimes leading to a permanent loss of respiratory capacity.  Panagis Galiatsatos, *What Coronavirus Does to the Lungs*, John Hopkins Medicine (April 13, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/what-coronavirus-does-to-the-lungs.

57. Patients with serious cases of COVID-19 require advanced medical support, including negative pressure ventilation and extracorporeal mechanical oxygenation in intensive care.  Lingzhong Meng, M.D.; Haibo Qiu, M.D.; Li Wan, M.D.; Yuhang Ai, M.D.; Zhanggang Xue, M.D.; et al, *Intubation and Ventilation amid the COVID-19 Outbreak: Wuhan's Experience*, Anesthesiology (June 6, 2020), https://anesthesiology.pubs.asahq.org/article.aspx?articleid=2763453.

58. Patients not killed by serious cases of COVID-19 may face prolonged recovery periods, including extensive rehabilitation from neurologic damage and loss of respiratory capacity. Pam Belluck, *Here's What Recovery From Covid-19 Looks Like for Many Survivors*, The New York Times (July 1, 2020), https://www.nytimes.com/2020/07/01/health/coronavirus-recovery-survivors.html.

### E.   COVID-19 is a deadly pandemic and public health emergency

59. The Governor of Texas declared COVID-19 a statewide public health disaster. Edgar Walters, *Texas governor declares statewide emergency, says state will soon be able to test thousands*, THE TEXAS TRIBUNE (Mar. 13, 2020), https://www.texastribune.org/2020/03/13/texas-coronavirus-cases-state-emergency-greg-abbott/.

60. Governor Greg Abbott has declared that "COVID-19 is now spreading at an unacceptable rate in the state of Texas, and it must be corralled."  Jeremy Blackman, *Gov. Abbott calls coronavirus surge 'unacceptable,' urges Texans to wear masks in public*, HOUSTON CHRONICLE (June 22, 2020), https://www.houstonchronicle.com/politics/texas/article/Gov-Abbott-calls-coronavirus-surge-15357929.php.

61. On March 11, 2020, the World Health Organization officially classified COVID-19 as a global pandemic. *Rolling updates on coronavirus disease (COVID-19)*, WORLD HEALTH ORG. (July 31, 2020), https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen.

62. On March 13, 2020, Texas Governor Greg Abbott determined that "COVID-19 poses an imminent threat of disaster" and, under Section 418.014 of the Texas Government Code, declared "a state of disaster for all counties in Texas." *Governor Abbott Declares State of Disaster In Texas Due To COVID-19*, OFFICE OF THE TEXAS GOVERNOR GREG ABBOTT (Mar.

13,                           2020),                          https://gov.texas.gov/news

/post/governor-abbott-declares-state-of-disaster-in-texas-due-to-covid-19.

63. The Texas Department of State Health Services determined on March 19, 2020 that "COVID-

19 represents a public health disaster within the meaning of Chapter 81 of the Texas Health

and Safety Code." *Executive Order GA 08 Relating to COVID-19 preparedness and

mitigation*, TEXAS SECRETARY OF STATE (Mar. 19, 2020),

https://www.sos.state.tx.us/texreg/archive/April32020/The%20Governor/The%20Governor.h

tml.

64. The same day, Governor Abbott issued Executive Order GA08, which provides in part that

"every person in Texas shall avoid social gatherings in groups of more than 10 people." *Id*.

65. In late June, the CDC estimated that over 20 million people in the United States may be infected

with COVID-19. Erika Edwards, *CDC estimate COVID-19 cases in the U.S. may be ten times

higher than reported*, NBC NEWS (June 25 2020 4:16 PM CDT),

https://www.nbcnews.com/health/health-news/cdc-says-covid-19-cases-u-s-may-be-10-

n1232134.

66. As of August 10, 2020, the United States has 5,023,649 total confirmed cases and 161,842

deaths. *Cases in the U.S.*, CTRS. FOR DISEASE CONTROL & PREVENTION,

https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited

August 11, 2020).

67. In Texas, the number of cases has reached 490,817 with 8,490 deaths as of August 10; Harris

County continues to lead in reported cases, with 85,757 cases. COVID-19 In Texas

(Dashboard), Texas Department of State Health Services,

https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9

cafc8b83 (last visited August 11, 2020).

68. There is no currently no vaccine against COVID-19.

### F.  COVID-19 is easily transmissible

69. COVID-19 is a particularly contagious virus.

70. Transmission occurs when respiratory droplets produced by an infected person who coughs, sneezes, or talks are inhaled by or land in the mouths, noses, or eyes of people nearby (particularly those within about six feet of an infected person).

71. The virus spreads more efficiently than influenza and the risk of spread is higher when interaction with others is closer and longer. *How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (June 16, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html.

72. COVID-19 has shown an ability to spread rapidly within the Jail.

73. Outside the walls of the Jail, COVID-19 continues to spread, leading Houston leaders to call for a lockdown to slow the virus's rapid spread. Caroline Linton, *Houston leaders call for lockdown as county reports more than 27,600 active coronavirus cases*, CBSNEWS, (July 12, 2020), https://www.cbsnews.com/news/texas-coronavirus-houston-leaders-call-for-lockdown-as-county-reports-more-surge-cases-2020-07-12/.

74. One study has shown that COVID-19 can survive for up to three hours in the air, four hours on copper, twenty-four hours on cardboard, and two to three days on plastic and stainless steel—the same type of surfaces prisoners come into contact every day at the Jail. Marilynn

Marchione, *Tests show new virus lives on some surfaces for up to 3 days*, ASSOCIATED PRESS (Mar. 11, 2020), https://apnews.com/fe0239e95b8ad1037639ed833b990e48.

75. Another study of an early cluster of COVID-19 cases in Wuhan, China, revealed the dangers of indirect transmission resulting from infected people contaminating common surfaces—in the study, it was a communal restroom, like the restrooms pre-trial detainees at the Jail use. Jing Cai et al., *Indirect virus transmission in cluster of COVID-19 cases, Wenzhou, China, 2020,* 26 EMERGING INFECTIOUS DISEASES 1343, 1345 (June 2020), *available at* https://wwwnc.cdc.gov/eid/article/26/6/20-0412_article.

76. Another study showed that controlling the spread of COVID-19 is made even more difficult due to the prominence of asymptomatic transmission (rendering many screening tools dependent on identifying symptomatic behavior ineffective). Chelsea Ritschel, *Coronavirus: Are People Who Are Asymptomatic Still Capable of Spreading COVID-19?*, INDEPENDENT (Mar. 15, 2020 8:16 PM), https://www.independent.co.uk/life-style/health-and-families/coronavirus-symptomsasymptomatic-covid-19spread-virus-a9403311.html.

### G. Correctional and detention facilities are ideal environments for COVID-19 transmission

77. Conditions of pre-trial confinement create an ideal environment for the transmission of a contagious disease. *See* Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinical Infectious Diseases 1047 (2007).

78. COVID-19 has been especially dangerous in areas of close confinement, such as cruise ships and assisted living facilities.

79. It follows that jails and prisons are particularly vulnerable to an outbreak.

80. In fact, jails and prisons are at an even greater risk because of their close quarters and communal living spaces. Evelyn Cheng & Huileng Tan, *China Says More than 500 Cases of the New Coronavirus Stemmed from Prisons*, CNBC (Feb. 20, 2020 11:53 PM), https://www.cnbc.com/2020/02/21/coronavirus-china-says-two-prisons-reported-nearly-250-cases.html.

81. Experts predict that "[a]ll prisons and jails should anticipate that the coronavirus will enter their facility." Nicole Wetsman, *Prisons and jails are vulnerable to COVID-19 outbreaks*, THE VERGE (Mar. 7, 2020 8:30 AM), https://www.theverge.com/2020/3/7/21167807/coronavirus-prison-jail-health-outbreak-covid-19-flu-soap (quoting Tyler Winkelman, co-director of the Health, Homelessness, and Criminal Justice Lab at the Hennepin Healthcare Research Institute in Minneapolis).

82. The CDC:

a. has published guidance for correctional and detention facilities to prepare and protect pre-trial detainees and personnel from the COVID-19 pandemic (*Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html);

b. has acknowledged that correctional and detention facilities "present unique challenges" for control of COVID-19 transmission among incarcerated individuals and recommended facilities should:

- provide a no-cost supply of soap to incarcerated/detained persons, sufficient to allow frequent hand washing;

- provide alcohol-based hand sanitizer containing at least 60% alcohol;

14

- adhere to CDC recommendations for cleaning and disinfection during the COVID-19 response (including cleaning and disinfecting frequently touched surfaces several times per day);

- encourage all persons in the facility to protect themselves by practicing good cough etiquette and good hand hygiene and avoiding touching of the eyes, nose, or mouth;

- encourage these behaviors by posting signage throughout the facility and communicating the information verbally on a regular basis;

- implement social distancing strategies to increase the physical space between incarcerated/detained persons (ideally 6 feet between all individuals, regardless of the presence of symptoms); and

- provide inmates with information and consistent updates about COVID-19 and its symptoms (Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities, Ctrs. for Disease Control & Prevention (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html);

c.  recommends considering "relaxing restrictions on allowing alcohol-based sanitizer in the secure setting where security concerns allow" (*Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional Detention Facilities*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html); and

d.  warns that jails are particularly susceptible to the spread of COVID-19 due to the high population density of pre-trial detainees, continued introduction of new pre-trial detainees, exposure to staff members and visitors, and their tight, confined environment (Megan Wallace et al., *COVID-19 in Correctional and Detention Facilities — United States, February-April 2020,* CTRS. FOR DISEASE CONTROL & PREVENTION (May 15, 2020), https://www.cdc.gov/mmwr/volumes/69/wr/pdfs/mm6919e1-H.pdf).

83. During the past few months, there have been over a thousand jail-related cases of COVID-19, with over 990 affected inmates at the Harris County Jail. Gabrielle Banks & Samantha Ketterer, *Harris County Jail is creeping back up to pre-COVID capacity, officials warn*, HOUSTON CHRONICLE (Jun. 12, 2020), https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-Jail-is-creeping-back-up-to-15337247.php.

84. County Sheriff Ed Gonzalez has acknowledged jails are high-risk facilities for COVID-19 outbreaks.    Ed Gonzalez (@SheriffEd_HCSO), TWITTER (Mar. 18, 5:24 PM), https://twitter.com/SheriffEd_HCSO/status/1240403638373298176 ("Jail administrators must remain proactive. Jails are perfect incubators for #COVID-19.").


### H.  Harris County

85. Harris County has become the epicenter of COVID-19 cases in Texas.

86. Social distancing is impossible at the Harris County Jail.    *See* Ed Gonzalez (@SheriffEd_HCSO), TWITTER (Mar. 29, 6:59 PM), https://twitter.com/SheriffEd_HCSO/status/1244413888608849921 ("It's impossible to practice social distancing and heightened hygiene when 8,000 people are detained in a close space.").

87. County Judge Lina Hidalgo linked ten percent of Harris County COVID-19 cases to the Jail and has characterized it as "a ticking time bomb". Lina Hidalgo (@LinaHidalgoTX), TWITTER (May 4, 2020, 4:57 PM), https://twitter.com/LinaHidalgoTX/status/1257429165604831233 ("220 sheriff's deputies associated with the jail have tested positive for #COVID19. Over 1/10 of ALL #COVID cases in our county are linked to the jail. Our efforts to reduce jail population were always about protecting our community & law enforcement from a ticking time bomb.").

88. On August 10, 2020, the Texas Commission on Jail Standards reported 154 employees of Harris County Jail tested positive for COVID-19 with 27 others quarantined pending test results. *TCJS COVID-19 Jail Report*, Texas Commission on Jail Standards, https://www.tcjs.state.tx.us/wp-content/uploads/2020/08/TCJS_COVID_Report.pdf (last visited August 10, 2020).

89. On August 10, 2020, the Texas Commission on Jail Standards reported 723 inmates of Harris County Jail tested positive for the COVID-19 with 2,354 others being "quarantined/isolated, not active". *Id.*

## CLASS ACTION

90. Pursuant to Federal Rule of Civil Procedure 23(a), (b)(1) and (b)(2), Plaintiffs bring this action on behalf of themselves and all similarly-situated persons.

91. Plaintiffs propose to represent a class composed of all pre-trial detainees who currently are (or who in the future will be) incarcerated at the Harris County Jail and who are subjected to Harris County Jail's policies and practices regarding COVID-19.

92. Plaintiffs also seek to represent a high-risk subclass of detainees, *i.e.*, those who are, according to the CDC, most at risk of severe illness or death from COVID-19, including those who:

   o   have chronic lung disease;

   o   have moderate to severe asthma;

   o   have serious heart conditions;

   o   are immunocompromised (including cancer treatments);

   o   are severely obese with a body mass index greater than 40; or

   o   have certain underlying medical conditions, particularly if not well controlled, such as those with diabetes, renal failure, or liver disease.

17

93. This action has been brought and may properly be maintained as a class action under federal law and satisfies numerosity, commonality, typicality, and adequacy requirements for maintaining a class action under Federal Rule of Civil Procedure 23.

94. A class action is superior to other available methods for fairly and efficiently adjudicating this controversy, especially since joinder of all class members is impracticable.

95. Each class member is irreparably harmed as a result of Defendant's wrongful conduct.

96. Litigating this case as a class action will reduce the risk of repetitious litigation relating to the Defendant's conduct.

97. Plaintiffs do not seek monetary damages, except as they may be incidental to injunctive relief and reasonable attorneys' fees.

### A. Numerosity

98. The joinder of each class member would be impracticable because each class is so numerous.

### B. Commonality

99. Common questions of law and fact exist as to all members of the class and predominate over any questions solely affecting individual members of the class.

100. The common questions of law and fact for the proposed class include:

    a. Whether Harris County adequately protects the class from the immediate threat of COVID-19?; and

    b. Whether the class's Fourteenth Amendment rights are being violated by Harris County's failure to implement adequate procedures and practices to protect the class from COVID-19?

101.   The common questions of law and fact for the proposed high-risk subclass include:

    a.   Whether the members of the proposed high-risk subclass are at heightened health risk from COVID-19?; and

    b.   Whether the members of the proposed high-risk subclass require heightened measures to protect them from COVID-19 infection?

**C. Typicality**

102.   Plaintiffs' claims are typical and representative of each class and subclass member's claims against Defendant, as identified above.

103.   Plaintiffs' claims arise from the same Harris County actions and inactions as those of the proposed class.

104.   Plaintiffs seek the same relief as the proposed class.

105.   Plaintiffs' legal theories are the same as those of the proposed class.

106.   All members of the class are similarly injured by Defendant's wrongful conduct and the harms Plaintiffs suffer are typical of the harms suffered by the class.

**D. Adequacy of Class Counsel**

107.   Plaintiffs and their counsel will fairly and adequately represent the interests of the class.

108.   Plaintiffs have no interest antagonistic to those of the class.

109.   Defendant has no defenses unique to Plaintiffs.

110.   Plaintiffs' counsel Hughes Ellzey, LLP and W. Craft Hughes have regularly (and successfully) engaged in major class action litigation and possess extensive experience in class action lawsuits.

111.   Other courts have found Hughes Ellzey, LLP and W. Craft Hughes to be adequate as class

counsel in other class action lawsuits.

112.   Hughes Ellzey LLP will timely submit its affidavit and biography in support of Plaintiffs'

forthcoming motion for class certification.

113.   "The fact that attorneys have been found adequate in other cases is persuasive evidence

that they will be adequate again." *Whitten v. ARS Nat. Services, Inc.*, No. 00-6080, 2001 WL

1143238, at *4 (N.D. Ill. Sept. 27, 2001).

114.   Moreover, "[a]bsent specific proof to the contrary, the adequacy of class counsel is

presumed." *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 539 (S.D. Fla. 2015).

## REQUEST FOR PRELIMINARY INJUNCTION

115.   In order for a district court to issue a preliminary injunction, Plaintiffs must establish: (1)

a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if

the injunction is not issued, (3) that the threatened injury if the injunction is denied outweighs

any harm that will result if the injunction is granted, and (4) that the grant of an injunction will

not disserve the public interest. *Palmer v. Waxahachie Indep. Sch. Dist*., 579 F.3d 502, 506

(5th Cir. 2009).

116.   Plaintiffs meet each of the foregoing elements.

### A.  Plaintiffs will suffer imminent and irreparable injury.

117.   Plaintiffs will suffer imminent and irreparable injury if Harris County is not enjoined from

failing to provide (1) educational materials concerning ways to slow the spread of COVID-19;

(2) sufficient amounts of hand sanitizers and soaps that lather; (3) adequate cleaning materials

to clean cells; (4) safe practices regarding the sharing of cleaning materials between pre-trial

detainees and between pods; (5) paper towels; and (6) requirements that staff use masks and gloves when interacting with inmates.

118.  Irreparable harm is defined as harm for which there is no adequate remedy at law. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 585 (5th Cir. 2013).

119.  There is no adequate remedy at law where (1) the legal remedy is merely illusory, or (2) effective legal relief cannot be obtained without filing multiple lawsuits.

120.  Here, the injuries posed are both imminent and irreparable.

121.  Imminent harm exists where future injury is "certainly impending." *Friends of Lydia Ann Channel v. United States Army Corps of Eng'rs*, 701 F. App'x 352, 355 (5th Cir. 2017) (unpub.).

122.  Severe illness and death are irreparable. *See Barrera v. Wolf*, No. 4:20-CV-1241, 2020 U.S. Dist. LEXIS 67640, *19, 2020 WL 1904497 (S.D. Tex. Apr. 17, 2020) ("Plaintiffs face serious irreparable harm if they are infected, in the form of severe illness, long-term health effects, and possibly death.").

123.  Plaintiffs and the class are a high-risk group that face impending and irreparable harm from COVID-19 resulting from conditions of confinement that do not comport with CDC guidelines. *See Basank v. Decker,* No. 20 CIV. 2518 (AT), 2020 WL 1953847 (S.D.N.Y. Apr. 23, 2020) (unpub.) (pre-trial detainees established they would suffer irreparable harm both by the risk of serious illness or death from COVID-19 and harm to their constitutional rights if they were returned to civil immigration detention at county jails).

124.  Plaintiffs' classification as "high risk" in a jail environment that does not comport with CDC guidelines creates a substantial threat of irreparable injury if the injunction is not issued.

125.   Plaintiffs' risk of serious illness or death is certainly impending when a high-risk population is placed in a jailhouse environment that

    i.   presents a unique and increased risk of COVID-19 spread due to high population density, continued introduction of new pre-trial detainees, exposure to staff members and visitors, tight confined environments, and

    ii.   is not compliant with CDC guidelines.

126.   If the court does not grant injunctive relief, these conditions of Plaintiffs' confinement pose a real risk of serious illness or death due to COVID-19.

127.   These conditions of Plaintiffs' confinement during a worldwide pandemic impede upon the Plaintiffs' clearly established constitutional rights as pre-trial detainees "to be secure in [their] basic human needs, such as medical care and safety." *United States v. Hinds Cty.*, 2020 U.S. Dist. LEXIS 67353, *5, (S.D. Miss. 2020) (unpub.)  (quoting *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 648 (5th Cir. 1996)).

128.   COVID-19 is known to be an easily transmissible, infectious disease that spreads through respiratory droplets and can sustainably spread throughout a community. *See Coronavirus Disease 2019 (COVID-19) Frequently Asked Questions (How does the virus spread?)*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/faq.html (last visited Aug. 11, 2020).

129.   Within the Jail, at least 993 inmates have tested positive for COVID-19, at least three of whom have died. Gabrielle Banks, *Harris County Jail is creeping back up to pre-COVID capacity, officials warn*, Houston Chronicle (Jun. 12, 2020), https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-Jail-is-creeping-back-up-to-15337247.php (last visited July 28, 2020); *see also* St. John Barned-

Smith, *A third Harris County jail inmate sick with COVID-19 has died,* Houston Chronicle (May 13, 2020), https://www.houstonchronicle.com/news/houston-texas/houston/article/A-third-Harris-County-jail-inmate-sick-with-15268499.php (last visited July 28, 2020).

130.    These cases of the ill and dead are more than numerical values to the Plaintiffs and represent uninterrupted threats to their health as they remain confined to the same enclosed spaces in which they currently await trials that are not immediately forthcoming through no fault of their own. *See* The Supreme Court of Texas, Twenty-Second Emergency Order Regarding The COVID-19 State of Disaster, https://www.txcourts.gov/media/1449564/209095.pdf ("A court must not hold a jury proceeding, including jury selection or a jury trial, prior to October1, except as authorized by this Order.").

131.    Defendant's failure to conform to CDC guidelines for correctional and detention facilities creates an unsafe, life-threatening condition that represents imminent and irreparable harm in the forms of life-threatening illness, presently unquantifiable debilitation, and death.

132.    Plaintiffs and those with pre-existing medical conditions will be irreparably harmed in the absence of an injunction because they represent a high-risk captive group in a high-risk environment and are likely to face serious illnesses, complications, or death if Defendant continues to ignore CDC-recommended protocols.

133.    These serious complications can include permanent lung scarring, blood clots, embolisms, strokes, heart damage (*e.g.,* vascular inflammation, myocarditis, and cardiac arrhythmias), and neurocognitive impacts. Louis Parshley, *The emerging long-term complications of Covid-19, explained*, VOXNEWS, (updated June 12, 2020),

https://www.vox.com/2020/5/8/21251899/coronavirus-long-term-effects-symptoms (last visited July 28, 2020).

134.    The impact of COVID-19 on lungs causes the heart to work harder to pump blood throughout the body, potentially resulting in heart failure (or, at least, damage to the heart's muscle tissue directly, which causes myocarditis—inflammation of the heart). *Can Coronavirus Cause Heart Damage?*, JOHNS HOPKINS MEDICINE (Apr. 24, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/can-coronavirus-cause-heart-damage.

135.    Research concerning COVID-19 is still evolving, so much so that scientists are not yet fully aware of other harms a person may suffer as a result of contracting COVID-19.

136.    Further, research has indicated an asymptomatic carrier of the virus may still suffer irreparable harm. Pien Huang, *We Still Don't Fully Understand The Label 'Asymptomatic'*, NPRNEWS (updated Jun. 23, 2020), https://www.npr.org/sections/goatsandsoda/2020/06/23/864536258/we-still-dont-fully-understand-the-label-asymptomatic (last visited July 28, 2020).

137.    Evidence also suggests that COVID-19 can also trigger an over-response of the immune system (*i.e.,* a cytokine storm) that further damages and destroys tissue and causes overwhelming inflammation, resulting in widespread damage and permanent injury to other organs. *Can Coronavirus Cause Heart Damage?*, JOHNS HOPKINS MEDICINE (Apr. 24, 2020), https://www.hopkinsmedicine.org/health/conditions-and-diseases/coronavirus/can-coronavirus-cause-heart-damage.

138.    These complications can manifest at an alarming pace.  *Id.*

**B. The harm faced by Plaintiffs outweighs the harm that would be sustained by Defendant if the preliminary injunction is granted.**

139.    To be granted a preliminary injunction, Plaintiffs must show that the threatened harm they face will outweigh the harm faced by the defendant. *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009).

140.    Defendant's awareness of the risk and continued failure to comply with CDC recommended guidelines for correctional facilities evidences its conscious disregard of the substantial risk of immediate and irreparable injury to plaintiffs.

141.    While Defendant may foreseeably be harmed financially by having to incorporate the preventative measures requested, this financial harm is not outweighed by the risk Plaintiffs face (particularly in the face of foreseeable and additional civil rights lawsuits in the event inmates suffer substantial injury or death).

142.    The financial harm suffered from providing paper towels, educational materials, soap, and masks pales in comparison to the harms Plaintiffs face.

143.    Defendant will suffer potentially more financial strain if the virus continues to spread than if they were to implement the requested preventative measures, including:

        a.  liability to pre-trial detainees and staff for unnecessary suffering and death;

        b.  increased strain on already limited jail medical resources;

        c.  increased strain on community health resources when pre-trial detainees or staff infect members of the community;

        d.  staff morale within the Jail;

        e.  pre-trial detainee morale within the Jail;

        f.  replacement of jail staff who are incapacitated or killed; and

        g.  benefits paid to jail staff who are incapacitated or killed.

144.   The rise in cases shows that the measures currently being implemented by the Defendant are not sufficient to protect high-risk pre-trial detainees at the Harris County Jail from the ravages of COVID-19.

145.   Plaintiffs are part of a high-risk population, are captives within an environment in which a highly contagious virus is already present, and are likely to face irreparable harms (including death) in the event they contract the disease.

146.   The Jail's COVID-19 response has failed to stop the virus's potential to "spread like wildfire," and since April the prison population has continued to increase. Gabrielle Banks and Samantha Ketterer, *Harris County Jail is creeping back up to pre-COVID capacity, officials warn*, HOUSTON CHRONICLE, (last updated June 12, 2020, 7:43PM), https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-Jail-is-creeping-back-up-to-15337247.php; *see also* Gabrielle Banks and Samantha Ketterer, *Exclusive: Lina Hidalgo seeking compassionate releases at Harris County Jail due to coronavirus*, HOUSTON CHRONICLE, (last updated June 23, 2020, 1:11 PM), https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-Judge-Lina-Hidalgo-seeking-15159260.php.

147.   Harris County's failures to provide Plaintiffs with adequate masks, sanitization materials (including paper towels, adequate amounts of soap that lathers, and hand sanitizers), and educational materials about how to slow the spread of COVID-19 is a continuously conscious disregard to the risk Plaintiffs face in the Harris County Jail.

### *Hygiene*

148.   Harris County is failing to provide Plaintiffs with paper towels to dry their hands during

a pandemic that spreads via water molecules.

149.   The CDC's official advice is for people to wash their hands. *How to Protect Yourself & Others,* CTRS. FOR DISEASE CONTROL & PREVENTION (July 31, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html.

150.   The CDC has also specifically recommended that each person thoroughly dry their hands after washing as germs can be easily transferred to and from wet hands. *Handwashing: Clean Hands Save Lives How to Wash Your Hands*, CENTERS FOR DISEASE CONTROL AND PREVENTION (July 20, 2020), https://www.cdc.gov/handwashing/show-me-the-science-handwashing.html.

151.   Harris County is also failing to regularly provide Plaintiffs with access to hand sanitizer, a potentially "life-saving tool". *See Valentine v. Collier*, No. 4:20-CV-1115, 2020 WL 1916883, at *11 (S.D. Tex. Apr. 20, 2020).

152.   The federal court for the Southern District of Texas recognized that there is "no known vaccine or cure for COVID-19" and the only option for protecting high risk individuals is "proper social distancing and personal hygiene." *Barrera*, 2020 U.S. Dist. LEXIS 67640, at *19, 2020 WL 1904497.

153.   Inmates have limited available options to protect themselves against COVID-19 and proper personal hygiene measures is one of the few ways to prevent transmission. *Id.* at *17.

154.   Pre-trial detainees in the Harris County Jail are not given adequate supplies of soap to wash their hands and mitigate spread.

155.   Pre-trial detainees are provided with soap that "doesn't sud" contrary to CDC-recommended guidelines. *Handwashing: Clean Hands Save Lives How to Wash Your Hands*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (last accessed July 20, 2020),

https://www.cdc.gov/handwashing/show-me-the-science-handwashing.html.

### *Education*

156.   Harris County is failing to provide pre-trial detainees with access to educational information concerning ways to slow the spread of COVID-19.

157.   The CDC has specifically recommended that such materials be provided to those who are incarcerated (including symptoms of COVID-19, reminders to report at the first sign of symptoms, reminders to use masks, and information concerning ways inmates can contribute to risk reduction). *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CTRS. FOR DISEASE CONTROL & PREVENTION (July 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html.

158.   Plaintiffs cannot protect themselves from contracting COVID-19, or mitigate the risk they face, if they are not given access to information about the ways to mitigate their risk.

### *Masks*

159.   Cloth face coverings (masks) are one of the most critical tools in preventing the spread of COVID-19.

160.   Harris County is failing to adequately provide clean masks to Plaintiffs.

161.   Masks are especially recommended where "social distancing measures are difficult to maintain." *Considerations for Wearing Masks*, CTRS. FOR DISEASE CONTROL & PREVENTION (Aug. 7, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html.

162. A mask provides source control in that they help prevent the person wearing the mask from spreading COVID-19 to others around them. *JAMA editorial reviews latest science, while case study shows masks prevented COVID spread*, CENTERS FOR DISEASE CONTROL AND PREVENTION (July 14, 2020) https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html.

163. Masks are of particular importance when a person is in public or around others, thereby evidencing their importance in detention facilities where social distancing is impossible. *Id*.

164. Between March and May 2020, at least one Plaintiff was given one purportedly clean 8-hour disposable surgical mask a total of three times.

165. In June 2020, detainees were given cloth masks.

166. These cloth masks have not been laundered or exchanged since they were provided.

167. Harris County's failure to provide clean masks violates CDC recommendations. *See Washing Cloth Face Coverings*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (last updated May 22, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-to-wash-cloth-face-coverings.html.

### *Harris County Staff Behavior and Regulations*

168. Harris County Jail staff fail to wear masks in congregations of two or more people and when interacting with inmates.

169. Harris County Jail staff suffer no repercussions for failing to wear masks when congregating with two or more people or interacting with inmates.

170. The absence of such repercussions evidence the policy, practice, custom, and procedure of Harris County with respect to jail staff wearing masks at the jail.

**C.  Issuance of a preliminary injunction would not adversely affect the public interest.**

171.    Accommodating plaintiffs' serious medical needs and implementing adequate prevention measures regarding COVID-19 would not adversely affect public policy or the public interest.

172.    Plaintiffs' specific allegations show that the current conditions at the Harris County Jail fail to meet the CDC's specific guidelines for the unique challenges in correctional and detention facilities – social distancing is admittedly "impossible," education and hygienic products are not present, and cleaning materials are insufficient.

173.    The requested relief would instead serve the public interest because it (1) supports the implementation of the CDC's recommendations for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors, (2) educates inmates concerning ways to slow the spread of COVID-19 that is consistent with those known by the general population, (3) lowers the potential for serious medical care at the expense of the public, and (4) lowers the risk of virus transmission in the Harris County community as a whole.

174.    Harris County Commissioner Rodney Ellis has acknowledged that:

    a.    "An outbreak in the jail would fill hospital beds and use limited resources." Rodney Ellis (@RodneyEllis), TWITTER (April, 11, 2020, 3:20 PM), https://twitter.com/RodneyEllis/status/1249069734722768897; and

    b.    "Harris County has the fourth-largest COVID cluster in the country, meaning more COVID cases can be connected to our jail facility than almost anywhere else in the nation."  Zach Despart, *Harris County Jail faces a new threat: Inmates who caught COVID on the outside*, HOUSTON CHRONICLE (updated July 29, 2020, 9:10 AM), https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-Jail-outbreak-faces-new-threat-15441206.php?cmpid=gsa-chron-result;

c. "Our sheriff has been working hard to keep people safe at the jail, but it's almost impossible to do it at a distance, and quarantine all the people."  *Id.*

175.   Therefore, issuance of injunctive relief would serve the public interest insofar as it would help prevent an outbreak at the Jail and free both hospital beds and limited resources.

**D. There is a substantial likelihood that Plaintiffs will prevail on the merits.**

176.   A mass outbreak of COVID-19 at the Jail would bring a "high likelihood of serious illness or death." *See Barrera*, 2020 U.S. Dist. LEXIS 67640, at *19, 2020 WL 1904497.

177.   Pre-trial detainees (like Plaintiffs) are afforded the same protections through the Fourteenth Amendment's Due Process Clause as the Eight Amendment's Cruel and Unusual Clause affords inmates. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979).

178.   Even those convicted of crimes are entitled to injunctive relief where there they can prove the existence of an unsafe, life-threatening condition.  *Helling v. McKinney*, 509 U.S. 25, 33 (1993) ("It would be odd to deny an injunction to inmates who plainly proved an unsafe, life-threatening condition."); *see also Gates v. Collier*, 501 F.2d 1291, 1302 (5th Cir. 1974) (granting injunctive relief where inmates' exposure to contagious diseases and other hazards created an environment which "clearly threatens the health and well being of the prison community").

179.   Plaintiffs have been convicted of no relevant crime and are awaiting trials that are not currently forthcoming through no fault of their own.  *See* Zach Despart, *Harris County Jail faces a new threat: Inmates who caught COVID on the outside*, HOUSTON CHRONICLE (updated July 29, 2020, 9:10 AM), https://www.houstonchronicle.com/news/houston-texas/houston/article/Harris-County-Jail-outbreak-faces-new-threat-

15441206.php?cmpid=gsa-chron-result (reporting that "almost all of the current inmates are felony arrestees" and "the county backlog in felony cases ballooned to around 41,000).

180.    Courts have granted injunctive relief to pretrial detainees and other incarcerated people who are being affected by COVID-19 in their respective facilities or are at high risk of being affected, *e.g.,*:

   a. *Banks v. Booth*, No. 1:20-cv-00849, 2020 WL 1914896 (D. D.C. Apr. 19, 2020) (ordering defendants to consult with public health professionals regarding educational programs for inmates, hire a sanitarian to oversee cleaning of the facility, ensure provision of cleaning supplies to each unit, enforce social distancing, and ensure inmates have access to daily showers, and clean laundry);

   b. *Mays v. Dart*, No. 20-C-2134, 2020 WL 1987007 (N.D. Ill. April 27, 2020) (ordering defendants to provide masks to detainees in quarantine or isolation and replace those masks at medically appropriate intervals, provide detainees with adequate amounts of soap and/or hand sanitizer and cleaning supplies, and enforce social distancing);

   c. *Seth v. McDonough*, No. 8:20-cv-01028, 2020 WL 2571168 (D. Md. May 21, 2020) (ordering defendants to provide the court with a plan regarding continued provision of soap and face masks to detainees, adequate cleaning supplies to units, and measures for social distancing).

181.    Other courts have issued injunctive relief with respect to COVID-19 in the form of releasing inmates.  *See, e.g., Basank v. Decker et al.*, No. 1:20-cv-02518, 2020 WL 1953847 (S.D.N.Y. Apr. 23, 2020) (on appeal); *Coronel v. Decker*, No. 20-cv-2472, 2020 WL 1487274 (S.D.N.Y. Mar. 27, 2020); *Thakker v. Doll*, No. 20-cv-480, 2020 WL 2025384 (M.D. Pa. Apr. 27, 2020) (on appeal); *Avendaño Hernandez v. Decker*, No. 20-cv-1589, 2020 WL 1547459

(S.D.N.Y. Mar. 31, 2020); and *Malam v. Adducci*, No. 5:20-cv-10829, 2020 WL 3512850

(E.D. Mich. June 28, 2020).

## REQUEST FOR PERMANENT INJUNCTION

182.   Plaintiffs and the class ask the court to set their application for injunctive relief for a full

trial on the issues in this application and, after the trial, to issue a permanent injunction against

Defendant pursuant to Federal Rule of Civil Procedure 23(b).

## PRAYER

183.   For these reasons, Plaintiffs and the class ask that the court do the following:

   a.   Issue a temporary preliminary and permanent injunction to abate the risk of serious

   harm described above by requiring Defendant to take the following health and

   safety measures:

      i.   provide effective communication to all people (including speakers of

      languages other than English) incarcerated at Harris County Jail concerning

      measures to reduce the risk of transmission of COVID-19;

      ii.   provide sufficient hand sanitizers and soaps to pre-trial detainees free of

      charge;

      iii.   provide an adequate supply of paper towels to pre-trial detainees free of

      charge;

      iv.   provide sufficient cleaning materials (including gloves) free of charge;

      v.   provide adequate masks in a method and manner consistent with CDC

guidelines free of charge;

vi. implement sufficient procedures preventing the sharing of cleaning materials between pre-trial detainees and pods;

vii. require staff to use sufficient PPE when in contact with plaintiffs or when coming into contact with other individuals at the Jail;

viii. implement sufficient procedures preventing the sharing of laundry between all pre-trial detainees; and

ix. implement sufficient procedures in accordance with CDC guidelines in regards to arrangements at chow time;

b. Enter judgment for Plaintiffs and the class;

c. Award costs of court;

d. Award attorneys' fees pursuant to 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 23; and

e. Grant any other relief it deems appropriate under law or equity (including release).

Respectfully submitted,

By /s/ William Pieratt Demond
William Pieratt Demond
Attorney-in-Charge
Texas Bar No. 24058931
So. Dist. Texas No. 1108750
Email: william@demondlaw.com

DEMOND LAW, PLLC
1520 Rutland Street
Houston, Texas 77008
Tel: 713.701.5240
Fax: 713.588.8407

W. Craft Hughes
Texas Bar No. 24046123
Fed. ID 566470
Jarrett L. Ellzey
Texas Bar No. 24040864
Leigh Montgomery
Texas Bar No. 24052214
1105 Milford Street
Houston, TX 77006
Telephone: (713) 322-6387
Fax: (888) 995-3335
jarrett@hughesellzey.com
craft@hughesellzey.com
leigh@hughesellzey.com

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served upon Defendants' counsel.

/s/ William Pieratt Demond
William Pieratt Demond